

NUMBER 13-07-559-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

VICTOR A. PALLARES, M.D. AND
PAIN AND ANESTHESIA ASSOCIATES,
P.L.L.C. D/B/A HEADACHE + PAIN CENTER,                    Appellants,

v.

MAGIC VALLEY ELECTRIC
COOPERATIVE, INC.,                                       Appellee.

On appeal from the 404th District Court of Cameron County, Texas.

## O P I N I O N

**Before Chief Justice Valdez and Justices Garza and Benavides
Opinion by Justice Garza**

This accelerated interlocutory appeal[1] involves the characterization of claims for

alleged fraudulent billing pertaining to medical treatment provided.  Appellants, Victor A.

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014 (a)(9) (Vernon Supp. 2007); TEX. R. APP. P. 28.1.

Pallares, M.D. and Pain and Anesthesia Associates, P.L.L.C. d/b/a Headache + Pain Center (collectively "Pallares"), appeal the trial court's denial of their motion to dismiss with prejudice for failure to file an expert report in a health care liability claim in favor of appellee, Magic Valley Electric Cooperative, Inc. ("Magic Valley"). By two issues, Pallares contends that: (1) the trial court erred in concluding that Magic Valley's causes of action were not health care liability claims, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (Vernon 2005); and (2) the trial court abused its discretion in denying their motion to dismiss with prejudice because Magic Valley failed to file an expert report within the statutorily required 120 days for health care liability claims, *see id.* § 74.351(a)-(b) (Vernon Supp. 2007). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Pallares is a physician licensed by the State of Texas specializing in the treatment of chronic pain. Magic Valley is a Texas corporation. It is undisputed that Pallares provided medical services to Diane Merett,[2] a beneficiary of Magic Valley's ERISA self-insured health plan, for chronic pain. Pallares's rendering of medical services resulted in a $631,850.99 bill to Magic Valley.

Magic Valley filed its original petition on November 20, 2006, asserting a cause of action for fraud pertaining to: (1) false representations allegedly made by Pallares that Merett had chronic pain, inducing Magic Valley to pay for unnecessary treatment; and (2) Pallares's billing with regard to Merett's chronic pain diagnosis. On December 21, 2006, Pallares filed their first amended original verified answer and jury demand, denying liability,

---

[2] Merett is not a party to this appeal.

challenging Magic Valley's capacity to bring the underlying suit, and characterizing Magic Valley's claims as health care liability claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13).

On June 4, 2007, Pallares filed a motion to dismiss Magic Valley's claims with prejudice. In their motion, Pallares argued that Magic Valley's claims should be dismissed with prejudice because their claims were health care liability claims which were improperly recast as fraud claims and that Magic Valley failed to provide the requisite expert report and curriculum vitae within 120 days of filing suit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a)-(b). In addition, Pallares contended that Magic Valley lacked capacity to bring suit.

After a hearing on August 30, 2007, the trial court denied Pallares's motion to dismiss with prejudice. Pallares filed their notice of appeal on September 13, 2007. This appeal ensued.

## II. STANDARD OF REVIEW

Generally, we review a district court's ruling on a motion to dismiss under section 74.351 for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877-78 (Tex. 2001). However, when the issue, as in this case, involves the applicability of chapter 74 to the plaintiff's claims and requires an interpretation of the statute, we apply a de novo standard of review. *Buck v. Blum*, 130 S.W.3d 285, 290 (Tex. App.–Houston [14th Dist.] 2004, no pet.); *Ponce v. El Paso Healthcare Sys., Ltd.*, 55 S.W.3d 34, 36 (Tex. App.–El Paso 2001, pet. denied).

3

## III. ANALYSIS

### 1. The Character of Magic Valley's Claims

In their first issue on appeal, Pallares argues that Magic Valley's claims are health care liability claims within the purview of chapter 74 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). Specifically, Pallares contends that Magic Valley has improperly recast its health care liability claim as a claim for fraud to circumvent the Texas Medical Liability Act. Pallares further alleges that Magic Valley's lack of capacity does not negate the existence of a health care liability claim in this suit.

Conversely, Magic Valley asserts that: (1) "this Court lacks jurisdiction to hear this appeal, as the underlying claim is not a health care liability claim, and therefore[,] this Court has no jurisdiction over an interlocutory appeal under section 51.014 of the Texas Civil Practice and Remedies Code," *see id.* § 51.014 (Vernon Supp. 2007); (2) its claim is not a health care liability claim, as defined by chapter 74 of the civil practice and remedies code, *see id.* § 74.001(a)(13); (3) because it is not a claimant under chapter 74 of the civil practice and remedies code, the trial court did not err in concluding that the Texas Medical Liability Act did not apply, *see id.* § 74.001(a)(2); and (4) Pallares is judicially estopped from arguing that Magic Valley's claims will require expert testimony because Pallares has already provided sworn lay witness testimony that the disputed treatment was medically necessary.

#### a. Jurisdiction

As a preliminary matter, we will address Magic Valley's contention that we lack jurisdiction. Pallares brought this appeal under the interlocutory appeal statute. *Id.* §

51.014(a)(9) (providing that a person may appeal from an interlocutory order of a district court, county court at law, or county court that denies all or part of the relief sought by a motion under section 74.351(b)).   Section 74.351(b) of the Texas Civil Practice and Remedies Code reads, "[i]f, as to a defendant physician or health care provider, an expert report has not been served  within the period specified by Subsection (a) [120th day after the date the original petition was filed], the court, on the motion of the affected physician or health care provider shall, subject to Subsection (c), enter an order that . . . (2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim." *Id.* § 74.351(a)-(b).  The record reflects that the trial court denied Pallares's motion to dismiss with prejudice filed pursuant to section 74.351.  *See id.* Therefore, we have jurisdiction over this matter.  *See id.* § 51.014(a)(9); *see also Valley Baptist Med. Ctr. v. Stradley*, 210 S.W.3d 770, 772-73 (Tex. App.–Corpus Christi 2006, pet. denied).

   **b. Applicable Law**

   The characterization of a claim as a health care liability claim is a threshold question in section 51.014 interlocutory appeals.  *See Stradley*, 210 S.W.3d at 772; *see also Valley Baptist Med. Ctr. v. Azua*, 198 S.W.3d 810, 813 (Tex. App.–Corpus Christi 2006, no pet.). Section 74.001(a)(13) of the civil practice and remedies code provides that a health care liability claim is:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative

5

services[3] directly related to health care, *which proximately results in injury to or death of a claimant*, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (emphasis added). "Plaintiffs cannot use artful pleading to avoid the . . . [Chapter 74] requirements when the essence of the suit is a health care liability claim." *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004); *see Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005). However, courts must be equally careful not to extend chapter 74's reach beyond its stated bounds. *Theroux v. Vick*, 163 S.W.3d 111, 113 (Tex. App.–San Antonio 2005, pet. denied) (citing *Zuniga v. Healthcare San Antonio, Inc.*, 94 S.W.3d 778, 781 (Tex. App.–San Antonio 2002, no pet.)). Not every action taken by a health care provider or every injury sustained by a patient is a health care liability claim. *Id.*

To establish a health care liability claim, the act or omission complained of must be an inseparable part of the rendition of medical services. *Rubio*, 185 S.W.3d at 848; *Rose*, 156 S.W.3d at 544; *Theroux*, 163 S.W.3d at 113. A cause of action is generally considered to be a health care liability claim if it is based on a departure from an accepted standard of medical care, health care, or safety of the patient, whether the action sounds in tort or contract. *Rubio*, 185 S.W.3d at 848; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13).

In determining whether a particular case presents a health care liability claim, we

---

[3] Section 74.001(a)(24) of the civil practice and remedies code provides that "professional or administrative services" are "those duties or services that a physician or health care provider is required to provide as a condition of maintaining the physician's or health care provider's license, accreditation status, or certification to participate in state or federal health care programs." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(24) (Vernon 2005). Medical billing is not included in the legislature's definition of "professional or administrative services." *See id.*

look not only to the pleadings but also to the underlying nature of the allegations.  *Rose*, 156 S.W.3d at 543; *Theroux*, 163 S.W.3d at 113.  In doing so, we are not bound by either party's characterization of the claims.  *Theroux*, 163 S.W.3d at 114.  Furthermore, in considering whether a claim is a health care liability claim, the court may consider whether proving the claim would require specialized knowledge of a medical expert.  *Rose*, 156 S.W.3d at 544; *Rubio*, 185 S.W.3d at 848; *cf. Haddock v. Arnspiger*, 793 S.W.2d 948, 951 (Tex. 1990) (holding that expert testimony is not needed to establish breach of a medical duty where the departure is clearly within the common knowledge of laymen, such as leaving a sponge in a patient after surgery).

### c. Discussion

In our initial inquiry as to whether Magic Valley's claims should be categorized as health care liability claims, we must determine whether Pallares is considered a health care provider or physician.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13).  Section 74.001(a)(12)(A) of the civil practice and remedies code defines a health care provider as "any person, partnership, professional association, corporation, facility, or institution, duly licensed, certified, registered, or chartered by the State of Texas to provide health care . . . ."  *Id.* § 74.001(a)(12)(A).  The record supports a finding that Pallares is a health care provider; moreover, the parties do not dispute this characterization.

Next, we must determine whether the underlying claim pertained to treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care.  *Id.* § 74.001(a)(13).  In its live pleading before the trial court, Magic Valley noted the

7

following:

> Ms. Merett was diagnosed with chronic and severe pain and the defendant undertook a course of treat[ment] which has resulted in costs in the amount of $631,850.99, which were unnecessary and inappropriate. The employee received no significant relief, other th[a]n temporary, and has resulted in the charges which are in contention herein.
>
> 4.3 The defendants' [Pallares's] representation that Ms. Merett, Plaintiff's [Magic Valley's] employee and insured, had had chronic pain was false, and at the time the representation was made, the defendant Pallares knew it to be false. *The defendant Pallares made the false representation with the intent of inducing the plaintiff to pay for such unnecessary treatment. Pallares'[s] purpose in making the false representation was either to secure a larger fee from the plaintiff than would otherwise have been charged, or to use the employee as a human guinea pig on which to experiment with the new drugs/treatment, or both.*

(Emphasis added).

Section 74.001(a)(10) provides that "health care" is "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id.* § 74.001(a)(10). Magic Valley clearly asserts that Pallares's treatment was medically unnecessary and was done with the purpose to extort a larger fee, as shown by Magic Valley's claim for fraudulent billing. Magic Valley contends that its claim for fraudulent billing does not relate directly to acts performed or furnished by Pallares during the medical care, treatment, or confinement of Merett. We agree.[4]

---

[4] *See, e.g., Christus Health v. Beal*, 240 S.W.3d 282, 292-93 (Tex. App.–Houston [1st Dist.] 2007, no pet.) (holding that a plaintiff's claims about an unsafe bed do not constitute a health care liability claim because the act complained of did not directly relate to the plaintiff's treatment for his drug addiction); *Valley Baptist Med. Ctr. v. Stradley*, 210 S.W.3d 770, 775-76 (Tex. App.–Corpus Christi 2006, pet. denied) (holding that claims against a wellness facility for injuries sustained when the plaintiff fell off a treadmill were not health care liability claims even though her doctor had recommended the exercise and facility to her, and stating that "in most situations a doctor's recommendation of regular exercise is no more related to the rendition of health care than the automobile ride one makes for a doctor's appointment").

Magic Valley's damages were merely tangential to the treatment Pallares provided to Merett; in fact, Magic Valley's claims directly relate to Pallares's alleged fraudulent billing practices. *See Shannon v. Law-Yone*, 950 S.W.2d 429, 434, 437-38 (Tex. App.–Fort Worth 1997, no pet.) (concluding that plaintiff patient may bring a fraud cause of action, as opposed to a health care liability claim, regarding allegations of false record creation and misrepresentations by a doctor to the patient, his friends, and his family in an attempt to lengthen the patient's stay at a psychiatric hospital to increase census and revenue). In construing the health care liability statute, we do not believe that the legislature intended to expand health care liability to peripheral claims not directly related to health care. *See id.* § 74.001(a)(2), (a)(13); *see also Stradley*, 210 S.W.3d at 775 (noting that based on a grammatically correct reading of the statute, a safety claim under chapter 74 can be categorized as a health care liability claim "only when it is against a health care provider or physician for a claimed departure from accepted standards of safety *directly related to health care*") (emphasis added); TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage"); *id.* § 312.006(a) (Vernon 1998) ("The Revised Statutes are the law of this state and shall be liberally construed to achieve their purpose and to promote justice.").

Third, the record does not contain evidence that Pallares's treatment of Merett proximately resulted "in injury to or death of a claimant." *See id.* § 74.001(a)(13). A claimant, as defined in the Texas Medical Liability Act, is "a person, including a decedent's estate, seeking or who has sought recovery of damages in a health care liability claim. All

persons claiming to have sustained damages as the result of the bodily injury or death of a single person are considered a single claimant." *Id.* § 74.001(a)(2). Magic Valley is not a claimant within the Texas Medical Liability Act because it did not undergo treatment by Pallares. *See id.* § 74.001(a)(2). It merely maintains a self-insured health plan for its employees, which is administered by a third-party administrator. Moreover, Magic Valley does not fit within the definition of a claimant as provided in the Texas Medical Liability Act because the record does not demonstrate that any person directly sustained bodily injury or death proximately caused by the health care treatment provided by Pallares.[5]

Pallares argues that the San Antonio Court of Appeals' holding in *Institute for Women's Health, P.L.L.C. v. Imad*, No. 04-05-00555-CV, 2006 Tex. App. LEXIS 1182, at **3-8 (Tex. App.–San Antonio Feb. 15, 2006, no pet.), supports their contention that Magic Valley cannot escape the requirements of chapter 74 by bringing a health care liability claim in a prohibited capacity. We, however, find *Imad* to be factually distinguishable from the present case.

In *Imad*, an embryologist destroyed nine embryos when he accidentally dropped a tray containing ten embryos. *Id.* at *2. The remaining embryo was implanted and lead to the birth of a healthy son for the Imads. *Id.* The Imads, however, brought suit against the Institute for Women's Health, PLLC, a fertility clinic, based upon theories of negligence, bailment, and wrongful death, arguing that they could bypass the health care liability statute because they were "seeking redress for destruction of a non-person . . . ." *Id.* at **2, 6-7.

---

[5] The record does not contain evidence of any subrogation rights that Magic Valley may have had with respect to Merett.

The San Antonio Court of Appeals held that chapter 74 of the civil practice and remedies code applied, and therefore, the Imads' failure to provide expert reports within the statutory period necessitated a dismissal of their claims. *Id.* at **7-10. The court based its holding on the fact that the Imads were claimants who themselves received the treatment and filed suit on their own behalf, not on the behalf of the destroyed embryos, and that the Imads's claims were derived from the negligence of the fertility clinic in the treatment of Mrs. Imad. *Id.* at *7. The court also noted that the Imads' pleadings sought damages for their own mental anguish, loss of companionship and society, and medical bills because of the destruction of the embryos. *Id.*

Unlike the Imads, Magic Valley has asserted throughout this case that its claims pertain to the fraudulent billing practices of Pallares, not on the account of any negligence or breach of the standard of care by Pallares in the treatment of Merett. Furthermore, the record demonstrates that Pallares did not provide treatment to Magic Valley itself and that Magic Valley's damages are only indirectly related to treatment provided by Pallares; this is unlike the claims made in *Imad* which were directly related to the embryologist's negligence in destroying nine embryos that were supposed to be implanted in Mrs. Imad. In fact, the character of Magic Valley's underlying claims most resemble that of the plaintiff in *Shannon*, who alleged, among other things, that his doctors "created false records as a basis for lengthening patients' stays to increase census and revenue, and that they misrepresented verbally to Shannon, his friends, and his family and in medical notes that he was suicidal, dangerous to his family, or a present danger to himself or others." *See Shannon*, 950 S.W.2d at 434-38.

11

We agree that Magic Valley does not have capacity to bring suit under chapter 74 given that Magic Valley is not a claimant.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(2); *see also Austin Nursing Ctr. v. Lovato*, 171 S.W.3d 845, 848-49 (Tex. 2005) (holding that for a plaintiff to have capacity, it must have the legal authority to act).  Magic Valley's underlying claims directly pertain to Pallares's alleged fraudulent billing practices and only indirectly reference the treatment provided to Merett to establish the fraud.  We are loath to extend the provisions of chapter 74 to peripheral claims that do not directly relate to treatment provided by a health care provider, and we do not believe that Magic Valley's claims are a circumvention of the Texas Medical Liability Act.

**2. The Effect of Medical Expert Testimony**

In any event, Pallares argues that medical expert testimony would be necessary for Magic Valley to establish that Pallares provided unnecessary treatment and, ultimately, overbilled Magic Valley.  *See Rose*, 156 S.W.3d at 544; *Rubio*, 185 S.W.3d at 848. Pallares further argues that because medical expert testimony is needed and because a layperson is not likely to clarify the issues at trial, Magic Valley's claims must necessarily be categorized as health care liability claims.  *See Rose*, 156 S.W.3d at 544; *Rubio*, 185 S.W.3d at 848.  Magic Valley concedes that medical expert testimony may be needed to establish its claim; however, Magic Valley contends that the possibility that medical expert testimony will be used to prove its claims is not enough to establish a health care liability claim. *See, e.g., Yamada v. Friend*, No. 2-07-177-CV, 2008 Tex. App. LEXIS 1680, at *10 (Tex. App.–Fort Worth Feb. 28, 2008, no pet. h.) (mem. op.) ("The fact that expert medical testimony may be needed at some point in a case does not perforce create a health care

liability claim").  We agree.

Even if medical expert testimony is needed, it is clear to us, for the reasons detailed above, that Magic Valley's claims do not constitute health care liability claims invoking chapter 74 of the civil practice and remedies code.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13).  Accordingly, we overrule Pallares's first issue on appeal.

## V. CONCLUSION

We affirm the trial court's order denying Pallares's motion to dismiss and remand the cause to the trial court for further proceedings.[6]

<br>

DORI CONTRERAS GARZA,
Justice

Opinion delivered and filed this
the 8th day of May, 2008.

---

[6] We need not address Pallares's issue pertaining to the alleged failure of Magic Valley to timely provide an expert report because we have concluded that Magic Valley's underlying claims are not health care liability claims.  *See* TEX. R. APP. P. 47.1; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a)-(b) (Vernon Supp. 2007).