NUMBER 13-10-00309-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT OF TEXAS

 

CORPUS CHRISTI
- EDINBURG

                                                        
             

 

CHRISTUS SPOHN HEALTH
SYSTEM 

CORPORATION D/B/A CHRISTUS
SPOHN 

HOSPITAL CORPUS CHRISTI -
SOUTH,                                   Appellant,

 

v.

 

JESSE J. CERVANTES,
INDIVIDUALLY AND 

ON BEHALF OF THE ESTATE OF
ELENA F. 

CERVANTES, DECEASED, AND
JOANN 

ESCOBAR, AND NELDA VELA,
INDIVIDUALLY,                    Appellees.

                                                                      

 

On appeal from the 319th District Court 

of Nueces County, Texas.

                            
                                         

 

MEMORANDUM OPINION

 

Before Justices Garza, Benavides, and Vela

Memorandum Opinion by Justice Garza

 

            In this interlocutory appeal, appellant Christus
Spohn Health System Corporation d/b/a Christus Spohn Hospital Corpus
Christi-South (“Christus”) challenges the trial court’s order denying its
motion to dismiss a health care liability claim brought by appellees Jesse J.
Cervantes, individually and on behalf of the estate of Elena F. Cervantes,
Joann Escobar, and Nelda Vela.  By a single issue, Christus contends that the
trial court erred in concluding that appellees’ expert reports complied with
section 74.351 of the civil practice and remedies code.  See Tex. Civ. Prac. & Rem. Code Ann. §
74.351 (Vernon Supp. 2010).  We affirm.

I.  Background

            Elena Cervantes, a 51-year-old woman, was
admitted to Christus on November 24, 2006, complaining of shortness of breath,
chest pain, cough, and fever.  Nicole Ewing, M.D., an emergency room physician,
examined Elena and noted that she was “toxic appearing,” had a rapid heart rate
and difficulty breathing.  Dr. Ewing also noted that Elena had highly elevated
blood sugar and low oxygen saturation in her blood.  After further examination,
Dr. Ewing diagnosed Elena with community-acquired pneumonia.  Elena was then
admitted to Christus’s intensive care unit (“ICU”), where she was treated by
Sunil K. Gupta, M.D.  On Dr. Gupta’s orders, Elena began taking Levaquin, an
antibiotic.  Several hours later, a nurse reported that Elena was aphasic, or
unable to speak.  After undergoing a CT scan, Elena went into respiratory
arrest at around 2:00 a.m. the following morning.  At around 9:00 a.m., another
physician, Pradyumma C. Mummady, M.D., examined Elena.  Elena died at 9:56
a.m.  Blood cultures taken after Elena’s death revealed the presence of Staphylococcus
bacteria.

            Appellees[1]
filed suit against Christus and Drs. Ewing, Gupta, and Mummady on November 17,
2008.[2] 
The lawsuit alleged in part that Christus, by and through its nursing staff,
(1) improperly assessed Elena’s medical condition, (2) failed to notify the
physicians of changes in Elena’s medical condition, (3) improperly responded to
Elena’s changes in condition, and (4) improperly administered medical and
nursing care and treatment to Elena.  In support of their original petition, appellees
attached expert medical reports authored by John J. Stern, M.D., a clinical
professor of medicine at the University of Pennsylvania, and Beatriz C. Smith,
a registered nurse.  See id. § 74.351(a).

            Christus timely responded to the lawsuit and
filed objections to the sufficiency of the expert reports.  After a hearing on
January 20, 2010, the trial court agreed with Christus that the reports were
insufficient.  The trial court specifically found that, with respect to
Christus, “the reports together are sufficient to detail the conduct the
plaintiff calls into question.  However, the Court finds that the reports,
taken together, do not adequately address the standard of care required of the
nurses and do not adequately address the issue of causation.”  The trial court
granted appellees one thirty-day extension to cure the deficiency.  See id.
§ 74.351(c).

On March 19, 2010, appellees filed
supplemental reports by Smith and Dr. Stern.  In her supplemental report, Smith
stated that the standard of care applicable to the nursing staff was to:

1.           
Perform
comprehensive nursing assessments regarding the health status of the patient,
and in the case of Elena Cervantes, note in particular her medical history of
staphylococcus infection and clearly observable symptoms of sepsis.

 

2.           
Make nursing
diagnoses that serve as the basis for the strategy of care, and in the case of
Elena Cervantes, note in particular her medical history of staphylococcus
infection, consequent susceptibility to same, and symptoms of acute sepsis.

 

3.           
Develop a plan of
care based on the assessment and nursing diagnosis.

 

4.           
Implement
appropriate nursing care.

 

5.           
Evaluate the
patient’s responses to nursing interventions, and in the case of Elena
Cervantes, notify treating physicians and emergency room and ICU physicians of
the non-efficacy of measures to control blood glucose and infection.

 

Smith then identified the following breaches of the standard
of care:

1.           
In emergency room
triage, the nursing staff failed to perform a proper assessment that would have
alerted hospital staff to Elena Cervantes’[s] clearly observable symptoms of
sepsis and allow notification of treating physicians and emergency room and ICU
physicians.

 

2.           
The emergency room
nursing staff failed to notify Elena Cervantes’[s] physicians of the dire
nature of her condition—namely uncontrolled blood sugar and symptoms of acute
sepsis.

 

3.           
In the emergency
room, L. Guarneri, R.N., failed to perform a comprehensive assessment of the
health status of Elena Cervantes and failed timely to assess and implement
interventions on Elena Cervantes’[s] behalf, including control of blood glucose
by insulin administration and treatment of infection via antibiotic
administration. . . .

 

4.           
Nurse Guarneri
also failed to evaluate Elena Cervantes’[s] response to the administered
therapies and communicate the non-efficacy of efforts to control infection. . .
. .[[3]]

 

In his supplemental report, Dr. Stern stated that the ICU
nursing staff breached the applicable standard of care by “fail[ing] to
accurately note the clinical symptoms and presentation of Elena Cervantes so
that those symptoms could be conveyed to her treating physicians” and by
“fail[ing] to convey to Elena Cervantes’[s] physicians the dire nature of her
condition and to insist that she have prompt physician evaluation.”  Dr. Stern
then offered the following opinion as to how these breaches caused the damages
suffered by Elena:

1.           
Accurately noting
the patient’s symptoms and presentation.  Had the nursing staff properly
observed and reported Elena Cervantes’[s] symptoms, presentation, and medical
history, in reasonable medical probability her acute sepsis would have been
diagnosed and treated earlier and within the window of opportunity when such
treatment would have been much more likely to be effective.  The failure of the
nursing staff to impress upon Elena Cervantes’[s] physicians the dire nature of
her condition contributed to the failure to treat her properly and, ultimately,
her death.

 

2.           
Communication of
the patient’s condition to her physicians.  Had the nursing staff demanded
earlier physician involvement, Ms. Cervantes’[s] care probably would have, at a
minimum, included additional appropriate antibiotic therapy.  A reasonable ICU
physician, upon being presented with a realistic account of Ms. Cervantes’[s]
condition[,] would have prescribed a broad-based course of antibiotic therapy. 
Given that her death was unquestionably secondary to the relentless effect of a
Staphylococcal aureus sepsis, earlier physician involvement would certainly
have had a saluterious [sic] effect on her health and in reasonable probability
saved her life.

 

Christus again objected to the reports’
sufficiency and moved to dismiss, asserting that Smith’s report “improperly
opines on causation” and that Dr. Stern’s report “is conclusory on the issue of
causation, and does not directly link actions or omissions by the nurses to
injuries suffered by the plaintiffs.”  After a hearing, the trial court found
the reports to be adequate and denied Christus’s motion to dismiss.  This accelerated interlocutory appeal followed.  See
id. § 51.014(a)(9) (Vernon 2008) (permitting appeal of interlocutory order
denying all or part of a motion to dismiss for failure to serve an expert
report in a health care liability claim); Tex.
R. App. P. 28.1(a) (stating that appeals from interlocutory orders are
accelerated).

II.  Standard of Review and
Applicable Law

            We review a trial
court’s order denying a motion to dismiss for failure to comply with the expert
report requirement under an abuse of discretion standard.  NCED Mental
Health, Inc. v. Kidd, 214 S.W.3d 28, 32 (Tex. App.–El Paso 2006, no pet.)
(applying abuse of discretion standard to trial court’s denial of motion to
dismiss); Kendrick v. Garcia, 171 S.W.3d 698, 702 (Tex. App.–Eastland
2005, pet. denied) (same); see Am. Transitional Care Ctrs. of Tex., Inc. v.
Palacios, 46 S.W.3d 873, 878 (Tex. 2001) (applying abuse of discretion
standard to trial court’s granting of motion to dismiss).  A trial court abuses
its discretion if it acts in an arbitrary or unreasonable manner or without
reference to any guiding rules or principles.  Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).  However, a trial
court has no discretion in determining what the law is or in applying the law
to the facts.  Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992); Baylor
Univ. Med. Ctr. v. Biggs, 237 S.W.3d 909, 916 (Tex. App.–Dallas 2007, pet.
denied).  Therefore, when the issues are purely questions of law, we
effectively conduct a de novo review.  See Pallares v. Magic Valley Elec.
Coop., Inc., 267 S.W.3d 67, 69-70 (Tex. App.–Corpus Christi 2008, pet.
ref’d).

            Under chapter 74,
a plaintiff asserting a health care liability claim must serve a medical expert
report upon each party’s attorney no later than the 120th day after the date
the original petition was filed.  Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(a).[4] 
The report must “provide[] a fair summary of the expert’s opinions as of the
date of the report regarding applicable standards of care, the manner in which
the care rendered by the physician or health care provider failed to meet the
standards, and the causal relationship between that failure and the injury,
harm, or damages claimed.”  Id. § 74.351(r)(6).  If it appears to the
court, after a hearing, that the report does not represent an “objective good
faith effort to comply with the definition of an expert report in Subsection
(r)(6),” then the trial court must dismiss the claim.  Id. § 74.351(l). 
To constitute a “good faith effort,” the report must provide enough information
to (1) inform the defendant of the specific conduct the plaintiff has called
into question, and (2) provide a basis for the trial court to conclude that the
claims have merit.  Bowie Mem’l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex.
2002); see Palacios, 46 S.W.3d at 879.

            The trial court
should look no further than the report itself, because all the information
relevant to the inquiry is contained within the document’s four corners.  Bowie
Mem’l Hosp., 79 S.W.3d at 52 (citing Palacios, 46 S.W.3d at 878). 
The report need not marshal all the plaintiff’s proof, but it must include the
expert’s opinion on each of the three elements that the civil practice and
remedies code identifies:  standard of care, breach, and causation.  Id. 
Moreover, an expert cannot merely state conclusions about these elements; the
expert must explain the basis of his or her statements to link the conclusions
with the facts.  Id. (citing Palacios, 46 S.W.3d at 878; Earle
v. Ratliff, 998 S.W.2d 882, 890 (Tex. 1999)).

III.  Analysis

            Christus argues on appeal that Dr. Stern’s
opinion is inadequate under chapter 74 because it is conclusory and speculative
as to causation.[5] 
See id.

First,
Christus asserts that the report is conclusory as to causation because it
“fails to explain exactly what [Christus] nurses should have done, yet failed
to do.”[6] 
Christus specifically takes issue with Dr. Stern’s statements that:  (1)
Elena’s acute sepsis would have been diagnosed earlier “[h]ad the nursing staff
properly observed and reported [Elena’s] symptoms, presentation, and medical
history”; and (2) the failure of the nurses to “impress upon” the physicians
the “dire nature” of Elena’s condition contributed to her death.  Christus
argues that “[w]ords like ‘proper’ and ‘impress upon’ and ‘dire’ are subjective
and do not inform [Christus] of exactly how the nurses’ actions or omissions
allegedly caused [Elena’s] injury and/or death.”  See Palacios, 46 S.W.3d at 880 (“Whether a defendant breached his or
her duty to a patient cannot be determined absent specific information about
what the defendant should have done differently . . . a fair summary must set
out what care was expected, but not given.”).  However, Dr. Stern’s statements
regarding causation obviously referenced the explanation earlier in his report
that the nursing staff breached its standard of care by failing to note Elena’s
“fever, poor oxygen and CO2 processing” and “her history of
staphylococcal infection” and by failing to communicate those facts to Elena’s
treating physicians.  This statement explained what the nurses should have
done; the subsequent statement regarding causation then explained why the
nurses’ failure to do those things led to the damages claimed by Elena.

            Christus further
contends that Dr. Stern’s report is speculative because “it provides no basis
for his assumption that the nurses (as opposed to the independent actions of
[the] physician defendant[s]) affirmatively caused Ms. Cervantes harm.”  In
support of this contention, Christus cites Costello v. Christus Santa Rosa
Health Care Corp., in which the plaintiff’s expert opined merely that “[i]f
this patient would have been appropriately triaged and evaluated, then in all
medical probability she would have survived.”  141 S.W.3d 245, 249 (Tex. App.–San
Antonio 2004, no pet.).  The San Antonio Court of Appeals found this to be
inadequate for purposes of chapter 74, noting that “[w]hile no particular term
or phrase is required for an expert to establish causation, the converse is
also true,” and “[w]ithout more, the magic words of ‘reasonable medical
probability’ provide no evidence of causation.”  Id.  Here, however, Dr.
Stern has provided more than just “magic words”; he has explained exactly what
the nurses should have done and why their failure to do it probably caused
Elena to suffer harm.  Specifically, Dr. Stern noted that, had the nurses “demanded
earlier physician involvement,” those physicians would have at least prescribed
additional antibiotic therapy, which probably would have saved Elena’s life. 
Although Dr. Stern’s causation theory with respect to the nurses is dependent
on subsequent actions taken by a physician, Dr. Stern also opines that “[a]
reasonable ICU physician, upon being presented with a realistic account of Ms.
Cervantes’[s] condition[,] would have prescribed a broad-based course of
antibiotic therapy.”  He has provided the necessary causal link—from the
nurses’ omissions to the physicians’ actions to the damages suffered by
Elena—thereby providing “a basis for the
trial court to conclude that the claims have merit.”  Bowie Mem’l Hosp.,
79 S.W.3d at 52.

            Finally, Christus argues that “Dr. Stern’s choice
of terminology”—specifically, his use of the word “probably”—“belies the
speculative nature of his causation opinion.”  Christus states as follows in
its appellate brief:

As
explained by the Texas Supreme Court, words like “probably,” “‘perhaps,’ and
‘possibly’ indicate conjecture, speculation, or mere possibility rather than a
qualified opinion based on reasonable medical probability.”  Columbia Med.
Ctr. of Los Colinas, Inc. v. Hogue, 271 S.W.3d 238, 246-47 (Tex. 2008) . .
. .

 

This is a mischaracterization of the supreme court’s holding
in Hogue.  In that case, the Court found, in a legal sufficiency
challenge to the evidence supporting the verdict in favor of the plaintiff, the
following expert testimony to be insufficient to raise a question of fact on
causation:

Q:        And if you would have considered [a] cardiac cause
higher on [your differential diagnosis], would that have meant you would have
considered obtaining a consultation of a cardiologist?

 

A:        Possibly.

 

Q:        Would that have meant that you would have
considered requesting an echocardiogram?

 

A:        Possibly.

 

Id. at 247.  The Court then explained that “‘[p]erhaps’
and ‘possibly’ indicate conjecture, speculation or mere possibility rather than
qualified opinions based on reasonable medical probability.”  Id. 
Christus’s attempt to add “probably” to the list of words indicating conjecture
is obviously wrong.  In fact, “probability” with respect to causation is
precisely the standard for recovery in an action under chapter 74.  See,
e.g., Columbia Rio Grande Healthcare v. Hawley, 284 S.W.3d 851, 860 (Tex.
2009) (“Recovery in a medical malpractice case requires proof to a
reasonable medical probability that the injuries complained of were
proximately caused by the negligence of a defendant.” (Emphasis added.)).  Dr.
Stern’s well-supported opinion that certain additional action by the nurses
would have “in reasonable probability saved [Elena’s] life” was sufficient to “provide a basis for the trial court to conclude that
the claims have merit.”  Bowie Mem’l Hosp., 79 S.W.3d at 52. 
Accordingly, the report complied with the chapter 74 requirement.

            We conclude that the trial court did not err by
denying Christus’s motion to dismiss.  Christus’s sole issue is overruled.

IV.  Conclusion

            We affirm the judgment of the trial court.

 

                                                                                                ________________________

                                                                                                DORI
CONTRERAS GARZA

                                                                                                Justice

 

Delivered and filed the

10th day of February, 2011.









[1] Appellee Jesse Cervantes is Elena’s surviving
husband.  The record does not reflect what relation, if any, appellees Escobar
and Vela had to Elena.

 





[2] The individual physician defendants are not parties
to this appeal.





[3] Smith did not
address the issue of causation in her report.





[4] The statute defines “health care liability claim” as:

 

a cause of action against a
health care provider or physician for treatment, lack of treatment, or other
claimed departure from accepted standards of medical care, or health care, or
safety or professional or administrative services directly related to health
care, which proximately results in injury to or death of a claimant, whether
the claimant’s claim or cause of action sounds in tort or contract.

 

Tex. Civ. Prac. & Rem.
Code Ann. § 74.001(a)(13) (Vernon 2005). 
It is undisputed that appellees’ claims fall under this definition.





[5] We note that Christus’s arguments on appeal pertain
entirely to Dr. Stern’s report.  Christus does not argue on appeal that Smith’s
report was inadequate in any way, despite having previously asserted in its
objections and motion to dismiss in the trial court that Smith’s report
“improperly opine[d] on causation.”  The judgment on appeal—which merely stated
that the trial court found “the reports to be adequate”—arguably implied that
each report is independently adequate to satisfy the chapter 74 requirement. 
If that were the case, then we would be bound to affirm the trial court’s
judgment regardless of the adequacy of Dr. Stern’s report.  Nevertheless, the
parties do not address this possibility.  Moreover, the parties appear to agree
on appeal that Smith’s report did not address the issue of causation at all. 
Accordingly, we will affirm only if Dr. Stern’s report was adequate as to the
issue of causation.

 





[6] As appellees note, this argument appears to challenge
the adequacy of Dr. Stern’s report with respect to the standard of care
element, rather than the causation element.  However, Christus’s objections to
Dr. Stern’s report in the trial court complained only that the report “is conclusory on the issue of causation, and does not
directly link actions or omissions by the nurses to injuries suffered by the
plaintiffs.”  Therefore, Christus has not preserved any issue regarding the
adequacy of Dr. Stern’s report with respect to the standard of care element.  See
Barber v. Dean, 303 S.W.3d 819, 826 n.5 (Tex. App.–Fort Worth 2009, no
pet.) (noting that grounds for insufficiency of an chapter 74 expert report not
specifically raised by timely objection are waived).  We will address
Christus’s issue only insofar as it bears upon the adequacy of the report as to
the causation element.