

NUMBER 13-11-00780-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| RIO GRANDE VALLEY VEIN CLINIC, P.A., D/B/A RGV VEIN LASER & AESTHETIC CLINIC, | Appellant, |
| v. | |
| YVETTE GUERRERO, | Appellee. |

**On appeal from the 138th District Court
of Cameron County, Texas.**

# MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides and Perkes
Memorandum Opinion by Justice Benavides**

The issue in this interlocutory appeal is whether laser hair removal is a "health care liability claim" under chapter 74 of the Texas Civil Practice and Remedies Code. Following our previous precedent in *Tesoro v. Alvarez*, we hold that laser hair removal is

not health care "treatment" and affirm the decision of the trial court to deny a motion to dismiss for failure to file an expert report. *See* 281 S.W.3d 654, 666 (Tex. App.—Corpus Christi 2009, no pet.).

## I. BACKGROUND

Appellee Yvette Guerrero sought laser hair removal services from Appellant Rio Grande Valley Vein Clinic ("RGV Vein Clinic"). While undergoing the laser hair removal process by a licensed physician, Guerrero allegedly suffered severe burns and scarring to her face, chin, and neck. As a result, Guerrero filed a lawsuit against RGV Vein Clinic. RGV Vein Clinic, asserting that Guerrero's lawsuit was a health care liability claim under chapter 74 of the civil practices and remedies code, filed a motion to dismiss due to Guerrero's failure to file a timely expert report in accordance with the statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2011). The trial court denied this motion, and this interlocutory appeal followed. *See Badiga v. Lopez*, 274 S.W.3d 681, 683 (Tex. 2009); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West 2008) (providing that a person may bring an interlocutory appeal of a trial court decision to deny all or part of the relief sought by a motion under section 74.351(b)).

## II. STANDARD OF REVIEW

Under chapter 74, any person who has brought a suit asserting a health care liability claim must provide an expert report for each physician or healthcare provider against whom the claim is asserted within 120 days of filing the claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). If an expert report is not filed, the trial court must, upon motion of the defendant, dismiss the claim with prejudice and award the defendant

2

reasonable attorney's fees and costs of court. *See id.* § 74.351(b). The statute defines what a health care liability claim is:

> A cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of actions sounds in tort or contract.

*Id.* § 74.001(a)(13) (West 2011).

Generally, we review a trial court's order denying a motion to dismiss under an abuse of discretion standard. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). Whether a cause of action is a health care liability claim, however, is a question of law that an appellate court must review de novo. *See Boothe v. Dixon*, 180 S.W.3d 915, 919 (Tex. App.—Dallas 2005, no pet.). "In determining whether a cause of action is a health care liability claim, we examine the underlying nature of the claim and are not bound by the form of the pleading." *Ghazali v. Brown*, 307 S.W.3d 499, 502 (Tex. App.—Fort Worth, pet. dism'd by agreement) (citing *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 847 (Tex. 2005)).

### III. DISCUSSION

**A.      Laser Hair Removal is not Health Care "Treatment"**

RGV Vein Clinic's issue is whether laser hair removal is a health care liability claim under chapter 74. In *Tesoro,* we set forth several reasons why laser hair removal should not be considered health care treatment. *See* 281 S.W.3d at 666. One of the primary reasons we held that laser hair removal did not fall under the purview of chapter

74 is because we concluded it was not health care "treatment" as intended by the statute.    In *Tesoro*, this Court noted that "the legislature chose not to define 'treatment.'" *See id.* at 658.    Thus, we looked to a medical dictionary which defined "treatment" as "the care and management of a patient to combat, ameliorate, or prevent a disease, disorder, or injury."    *Id.* at 659 (citing MOSBY'S MEDICAL DICTIONARY 1880 (8th ed. 2009)). We also noted that the Medline Plus online dictionary defined "treatment" in the medical context as "the action or manner of treating a patient medically or surgically" and defined the verb "treat" as "to care for or deal with medically or surgically:    deal with by medical or surgical means."    *Id.*    We find this same analysis persuasive here.    We conclude that laser hair removal is not medical treatment for the purposes of chapter 74.    The removal of excess body hair in this case was a question of cosmetics or aesthetics; it was not a "disease, disorder, or injury."[1]

## B.    RGV Vein Clinic's Arguments

### 1.  Person Performing the Treatment

RGV Vein Clinic urges us to distinguish between the facts in *Tesoro* and the underlying case.    For example, in *Tesoro*, a nurse performed the alleged negligent acts which caused severe injury, whereas here, a physician performed the alleged negligence.    *See Tesoro*, 281 S.W.3d at 656.    However, as we have noted before, not every action taken by a health care provider falls within the ambit of Chapter 74. *Pallares v. Magic Valley Electric Coop.*, 267 S.W.3d 67, 71 (Tex. App.—Corpus Christi

---

[1] We find the dissent's discussion regarding hirsutism and hypertrichosis, conditions involving excess body hair, irrelevant to this opinion, as these facts were not part of the trial court's record.

4

2008, pet. denied) (citing *Theroux v. Vick*, 163 S.W.3d 111, 113 (Tex. App.—San Antonio 2005, pet. denied)).

When we issued our decision in *Tesoro*, laser hair removal had not yet been regulated by the Texas Legislature. *See* 281 S.W.3d at 664–65. Now, however, laser hair removal is regulated by the state, and the Legislature has deemed that an individual does not have to be a physician or health care provider to perform this procedure. *See* TEX. HEALTH & SAFETY CODE ANN. § 401.504 (West 2010). Indeed, one who is certified to operate these hair removal lasers may even do so without a physician's direct supervision. *Id.* And, although one is certified, the certificate does not "authorize the person to diagnose, treat, or offer to treat any client for any illness, disease, injury, defect, or deformity of the human body." *Id.* § 401.504(b).

The Legislature does require, though, that all laser hair removal facilities have a written contract with a consulting physician to "establish proper protocols for the services provided at the facility" and to "audit the laser hair removal facility's protocols and operations." *See* TEX. HEALTH & SAFETY CODE ANN. § 401.519(a) (West 2010). The dissent seems to imply that this requirement means that a physician's supervision is compulsory. A contract to establish protocol, however, does not constitute a physician's direct "supervision." A plain reading of the statute shows that the Legislature did not intend for a doctor to be present when laser hair removal is performed; to consider otherwise would be to read outside the language of the statute. *See Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex. 2000) ("We ascertain the Legislature's intent in the plain and common meaning of the words used."). The fact

5

that a consulting physician must be available for emergency consultations or appointments relating to care, *see id.* § 401.519(c), does not persuade us that direct physician supervision is required, either.

This statute, instead, establishes that a non-health care professional may provide this cosmetic service and that the right to perform this service in no way authorizes that person to offer any form of medical diagnosis or treatment. *See id.* § 401.504(b). And although we recognize that the statute "does not apply to a physician or to a physician's employee or delegate acting under Chapter 157, Occupations Code," *see id.* § 401.504(d), we are not convinced that the Legislature would deem a laser hair removal lawsuit a health care liability claim if a doctor performed the procedure, but not one if a non-health care provider performed the service. This interpretation of the statute would be nonsensical and would create inconsistencies in the law. *See Molinet v. Kimbrell*, 356 S.W.3d 407, 414–15 (Tex. 2011) (holding that "it is the Legislature's prerogative to enact statutes; it is the judiciary's responsibility to interpret those statutes according to the language the Legislature used, absent a context indicating a different meaning or the result of the plain meaning of the language yielding absurd or nonsensical results").

Further, we are not convinced by the dissent's conclusion that "a physician's office" rather than "a spa or nonmedical setting" necessarily determines whether chapter 74 should apply. Location should not be a deciding factor in ascertaining whether certain procedures are deemed medical treatment. *See Tesoro*, 281 S.W.3d at 660 (noting that "the fact that conduct occurs in a medical clinic cannot, by itself, transform the conduct into 'health care.'"). "Treatment" as "the care and management of a patient

6

to combat, ameliorate, or prevent a disease, disorder, or injury," *Tesoro*, 281 S.W.3d at 659, should be what courts look at to determine if a lawsuit is a health care liability claim.[2] Under a strict construction of the statute, we conclude that the Legislature purposely intended to keep laser hair removal separate from a health care liability claim.

### 2. Medical Documentation

Further, RGV Vein Clinic points out that there was no medical documentation in the appellate record in *Tesoro*. *See* 281 S.W.3d at 659–60. In contrast, here, we have an executed patient consent form, a HIPAA release, and a patient medical chart. However, we still find the analysis and reasoning of in the definition of "treatment" highly persuasive in this matter, and our respect for our own precedent encourages us to defer to or apply the notion of stare decisis. *See Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 749–50 (Tex. 2006) (holding that courts are "bound to consider the principles of stare decisis" and that "stare decisis has its greatest force in cases construing statutes . . . ."). This additional documentation, although regularly used in a health care setting, does not convince us that laser hair removal is "treatment" for a "disease, disorder, or injury."

## C. Split in Jurisprudence

We are aware that the jurisprudence on whether laser hair removal is health care "treatment" is split among our sister appellate courts. *See Bioderm Skin Care, LLC v. Sok*, 345 S.W.3d 189, 192–93 (Tex. App.—Dallas 2011, pet. filed) (concluding that laser

---

[2] We note that the dissent's citation of "treatment" is incomplete. This Court did not define health care "treatment" as simply an act by which to "prevent injury." *See Tesoro v. Alvarez,* 281 S.W.3d 654, 659 (Tex. App.—Corpus Christi 2009, no pet.).

hair removal is not health care treatment); *Ghazali*, 307 S.W.3d at 504–05; *Tesoro*, 281 S.W.3d at 659; *and compare with Kanase v. Dodson*, 303 S.W.3d 846, 850 (Tex. App.—Amarillo 2009, no pet.) (holding that laser hair removal is health care treatment for the purposes of chapter 74); *see also Stanford v. Thomas*, No. 06-11-00011-CV, 2011 Tex. App. LEXIS 4754, at **27–28 (Tex. App.—Texarkana June 8, 2011, no pet.) (mem. op.) (same); *Sarwal v. Hill*, No. 14-01-01112-CV, 2002 Tex. App. LEXIS 8783, at **8–9 (Tex. App.—Houston [14th Dist.] Dec. 12, 2002, no pet.) (mem. op., not designated for publication) (same).   We note that the Texas Supreme Court has recently requested the appellate record and briefing on the merits in the *Bioderm Skin Care* case from the Dallas Court of Appeals, and we await guidance from Texas's high court to resolve this divergence of opinion among the appellate courts.[3]

Until this issue has been decided by the supreme court, this Court will continue to follow our precedent which construes chapter 74 and the meaning of a "health care liability claim" narrowly, as we believe the Legislature intended.   *See Tesoro,* 281 S.W.3d at 659; TEX. GOV'T CODE ANN. § 22.001 (West 2004) (providing that the supreme court has jurisdiction over "a case in which one of the courts of appeals holds differently from a prior decision of another court of appeals").   As we have noted before, "courts must be . . . careful not to extend [c]hapter 74's reach beyond its stated bounds."   *See Pallares*, 267 S.W.3d at 71.   We decline to do so here.

Accordingly, we overrule RGV Vein Clinic's sole issue.

---

[3] The Texas Supreme Court made this request on June 11, 2012.

8

## IV. CONCLUSION

Having overruled RGV Vein Clinic's issue, we affirm the judgment of the trial court.

_____
GINA M. BENAVIDES,
Justice

Dissenting Memorandum
Opinion by Justice Gregory T. Perkes.

Delivered and filed the
30th of August, 2012.

9