

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-09-191-CV**

BASITH GHAZALI, M.D.                                    APPELLANT

V.

PATRICIA BROWN                                         APPELLEE

------------

## FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

### I. Introduction

Appellant Basith Ghazali, M.D. appeals the trial court's denial of his motion to dismiss Appellee Patricia Brown's claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (Vernon 2009), § 74.351(b) (Vernon Supp. 2009). In two issues, Dr. Ghazali argues that Brown's claims against him are health care liability claims and that the trial court erred by failing to dismiss her claims with prejudice because she did not provide an expert report fulfilling the

requirements of section 74.351.  *Id.* § 74.351(r)(6).  Because we hold that Brown's claims are not health care liability claims, we will affirm.

## II.  Factual and Procedural History

In May 2004, Brown visited an American Laser Center location in Fort Worth for laser hair removal on her lip, cheek, jaw line, and neck.  At that time, Dr. Ghazali served as the medical director at the facility.[1]  Between May 2004 and September 2006, Brown went to American Laser Center at recommended intervals.   But Brown claims she suffered severe burning, blistering, and lacerations on her face and neck during her visit on September 8, 2006, that resulted in permanent scarring and discoloration.

On September 5, 2008, Brown filed her original petition against Dr. Ghazali and the American Laser Center corporate entities and alleged negligence, negligent failure to warn, gross negligence, violations of the Texas Deceptive Trade Practices–Consumer Protection Act, fraud, and lack of informed consent.[2]  Within the 120-day period required by section 74.351,

---

[1] Dr. Ghazali was not affiliated with American Laser Center after September 2005.

[2] Brown asserts her claim for lack of informed consent as an alternative to her other causes of action.

Brown served Dr. Ghazali with an expert report authored by Dr. Gil Segev. Relying on Brown's statements, medical history, and medical files, Dr. Segev wrote in his report, among other things, that

- an African-American individual should be informed that the inherent risks of laser hair removal are increased in individuals with darker skin tones;

- one specific laser, an Nd:YAG laser, is safer to use on African-American individuals than other types of hair removal lasers;

- Dr. Ghazali failed to obtain written informed consent from Brown;

- Dr. Ghazali failed to obtain verbal informed consent from Brown; and

- Dr. Ghazali's failure to obtain informed consent ultimately caused Brown's injuries.[3]

Dr. Ghazali filed a motion to dismiss Brown's claims pursuant to section 74.351(b). The trial court sustained Dr. Ghazali's objections to the sufficiency of Dr. Segev's report, finding that the report failed to demonstrate a relationship, direct or indirect, between Dr. Ghazali and Brown, but the trial

---

[3] It is undisputed that Dr. Ghazali's name does not appear in Brown's medical records and that Dr. Ghazali did not perform, or participate in performing, the procedure.

3

court granted Brown a thirty-day extension to correct the deficiency.  Brown

then served an amended report with the following additional language:

> I have reviewed Defendant[']s responses to Plaintiff's discovery requests, which identify [Dr. Ghazali] as the on-site medical director for American Laser Center's Fort Worth Office.  Based on my experience as a founder and active national medical director of Laser Perfect, a laser hair removal company with over 20 locations, it is my opinion that an indirect physician-patient relationship existed between Patricia Brown and [Dr. Ghazali].[4]

Dr. Ghazali thereafter filed a second motion to dismiss.  The trial court heard

and denied Dr. Ghazali's second motion to dismiss on June 4, 2009, and this

interlocutory appeal followed.

### III.  Standard of Review

Generally, we review a trial court's denial of a motion to dismiss under

section 74.351 for an abuse of discretion.  *Am. Transitional Care Ctrs. of Tex.,*

*Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *Moore v. Gatica*, 269

S.W.3d 134, 139 (Tex. App.—Fort Worth 2008, pet. denied).  However, we

review de novo the trial court's denial of a motion to dismiss when it involves

the determination of whether a claim is a health care liability claim under

chapter 74.  *Tesoro v. Alvarez*, 281 S.W.3d 654, 656 (Tex. App.—Corpus

---

[4] There were no other changes to the expert report.

Christi 2008, no pet.); *Lee v. Boothe*, 235 S.W.3d 448, 451 (Tex. App.—Dallas 2007, pet. denied).

### IV. Nonablative Laser Hair Removal Is Not Medical Care

The legislature enacted the Medical Liability and Insurance Improvement Act (MLIIA) to "reduce excessive frequency and severity of health care liability claims" and to "make affordable medical and health care more accessible and available to the citizens of Texas." *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004). To serve these purposes, the MLIIA includes numerous procedural requirements for health care liability claims, including a requirement that a claimant timely provide each defendant with a sufficient expert report. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351.

For the MLIIA to apply, however, a claim must be a "health care liability claim." *See id.*; *Rose*, 156 S.W.3d at 543; *see also Yamada v. Friend*, No. 02-07-00177-CV, 2008 WL 553690, at *4 (Tex. App.—Fort Worth Feb. 28, 2008, pet. granted) (mem. op.) ("A claim alleging a breach of a standard of medical care is a health care liability claim.") (citing *Wright v. Fowler*, 991 S.W.2d 343, 352 (Tex. App.—Fort Worth 1999, no pet.)). Dr. Ghazali contends that we need to look no further than Brown's petition to determine that her claim is a health care liability claim, but in determining whether a cause

5

of action is a health care liability claim, we examine the underlying nature of the claim and are not bound by the form of the pleading. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 847 (Tex. 2005).

**A. Definitions of Health Care, Medical Care, and Treatment**

In determining whether Brown's claim is a health care liability claim, we begin with established principles of statutory construction. *Marks v. St. Luke's Episcopal*, No. 07-0783, 2009 WL 2667801, at *3 (Tex. Aug. 28, 2009). The prevailing principle is that we give effect to legislative intent. *See* Tex. Gov't Code Ann. § 312.005 (Vernon 2009); *see also Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 383 (Tex. 2000). We then interpret a statute by reading the words and phrases in context and construing them according to the rules of grammar and common usage. Tex. Gov't Code Ann. § 311.011(a) (Vernon 2009). Words that are not defined are given their ordinary meaning. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999). When possible, all words are given effect and none of the statute's language is treated as surplusage. *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 402 (Tex. 2000).

The MLIIA provides the following definitions relevant to Brown's claims:

6

"Health care" means any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's *medical care*, *treatment*, or confinement.

　　　. . . .

"Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of *medical care*, or *health care*, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

　　　. . . .

"Medical care" means any act as defined as *practicing medicine* under Section 151.002, Occupations Code, performed or furnished, or which should have been performed, by one licensed to practice medicine in this state for, to, or on behalf of a patient . . . .

Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(10), (13), (19) (Vernon 2009)

(emphasis added).

"Practicing medicine" means the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions . . . .

Tex. Occ. Code Ann. § 151.002(13) (Vernon 2009).

Although the MLIIA defines medical care, it does not define "treatment."

*See generally* Tex. Civ. Prac. & Rem.Code Ann. § 74.001*; Tesoro*, 281 S.W.3d

7

at 658.  Therefore, we look to the plain meaning of "treatment" to determine its application in this case.  Tex. Civ. Prac. & Rem. Code Ann. § 74.001(b) ("Any legal term or word of art used in this chapter, not otherwise defined in this chapter, shall have such meaning as is consistent with the common law."); *Kendrick v. Garcia*, 171 S.W.3d 698, 704 (Tex. App.—Eastland 2005, pet. denied) ("[Section 74.001(b)] essentially restates the rule of statutory construction that terms in a statute are to be given their plain meaning."). "Treatment" is defined by Mosby's Medical Dictionary as "the care and management of a patient to combat, ameliorate, or prevent a disease, disorder, or injury."  Mosby's Medical Dictionary 1880 (8th ed. 2009).  We will therefore use this definition in deciding whether laser hair removal constitutes medical care or treatment.

Because the parties agree that Dr. Ghazali is a physician, the primary issue before this court is whether Brown's claim concerns an act that occurred, or should have occurred, during her medical care or treatment.

## B.  Brown's Claim Is Not A Health Care Liability Claim

The parties do not argue, and the record does not suggest, that Brown sought laser hair removal to "combat, ameliorate, or prevent a disease, disorder, or injury" or that the hair removal relates to a "physical disease or disorder or

8

physical deformity or injury." *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(19); Tex. Occ. Code Ann. § 151.002(13); Mosby's Medical Dictionary 1880 (8th ed. 2009). Therefore, Brown's laser hair removal is not "treatment" or "medical care." And because Brown's laser hair removal is not "treatment" or "medical care," it follows that it is also not "health care" because "health care" requires an act or treatment during the patient's medical care or treatment.[5] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(10).

In 2009, the legislature amended the health and safety code to specifically regulate laser hair removal procedures and facilities. *See* Tex. Health & Safety Code Ann. §§ 401.501–.520 (Vernon Supp. 2009). Under the

---

[5] We are aware of our sister court's holding that laser hair removal is related to health care when the pleadings allege either that appellants were directly negligent for failing to adequately train and supervise employees or for breaching the standard of care applicable to such health providers. *See Kanase v. Dodson*, No. 07-08-00472-CV, 2009 WL 3425633, at *5 (Tex. App.—Amarillo Oct. 26, 2009, no pet.) However, in the *Kanase* opinion, the court does not include an analysis of whether cosmetic laser hair removal conducted by a layperson meets the statutory definition of medical care, treatment, or health care. Moreover, "courts must be equally careful not to extend Chapter 74's reach beyond its stated bounds. Not every action taken by a health care provider or every injury sustained by a patient falls within the ambit of the MLIIA." *See Pallares v. Magic Valley Electric Coop., Inc.*, 267 S.W.3d 67, 71 (Tex. App.—Corpus Christi 2008, pet. denied) (citing *Theroux v. Vick*, 163 S.W.3d 111, 113 (Tex. App.—San Antonio 2005, pet. denied). Thus, we decline to follow *Kanase*.

9

amended code, an individual does not have to be a physician or health care provider to perform laser hair removal—and may do so without a physician's supervision—as long as the individual holds the appropriate certificate and does not diagnose, treat, or offer to treat any client for any physical illness, disease, injury, defect, or deformity. *Id.* §§ 401.504(b), 401.505. The amendment limits a physician's involvement in cosmetic laser hair removal by simply requiring a laser hair removal facility to have a written contract with a physician to establish protocols for the facility's services and to audit the facility's protocols and operations. *Id.* § 401.519. This contractual requirement is not related to Brown's claims; nor does Brown assert that Dr. Ghazali diagnosed, treated, or offered to treat her for any physical illness, disease, injury, defect, or deformity. *Id.* §§ 401.504(b), 401.505. We therefore hold that Brown's lawsuit concerning her laser hair removal does not constitute a health care liability claim.[6]

---

[6] Having held Brown's laser hair removal is not health care, medical care, or treatment, we decline to conclude that the mere use of the word "treatment" in Brown's petition requires a determination that the underlying nature of her claim is a health care liability claim. *See Tesoro*, 281 S.W.3d at 659; *Diversicare Gen. Partner, Inc.*, 185 S.W.3d at 847.

10

The reasoning in *Tesoro v. Alvarez* supports our conclusion that Brown's claim is not a health care liability claim. *See* 281 S.W.3d at 660–65. In concluding that Alvarez's claim was not a health care liability claim, the *Tesoro* court determined that laser hair removal is not transformed into "health care" simply because the procedure occurs in a medical clinic or the alleged negligence involved a regulated medical device. *Id.* at 660–61. In addition, the *Tesoro* court considered the following factors: (1) a laser hair removal device could be used by a lay person without a physician or a health care provider present; (2) the absence of allegations of medical treatment or breaches of medical care in Alvarez's original petition;[7] (3) the absence of legislation concerning the regulation of laser hair removal; and (4) the holdings of other states' courts of appeals that laser hair removal is not "health care." *Id.* at 662–65. We agree with the *Tesoro* court's analysis and believe it supports our holding here.

---

[7] Brown's petition alleges that "employees" operated the laser hair removal machines and does not allege a breach of medical care. Thus, we find this case distinguishable from *Sarwal v. Hill*. No. 14-01-01112-CV, 2002 WL 31769295, at *2–3 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (not designated for publication) (holding that appellee's claim of negligence was a health care liability claim because the appellee alleged that (1) her physician explained the laser hair removal procedure to her and (2) the physician's registered nurse who performed the procedure, resulting in the burning and scarring of appellee's skin, "breached nursing standards of care").

**C. Brown's Laser Hair Removal Is Not An Inseparable Part Of The Rendition of Medical Care**

An act or omission by a healthcare provider falls within the scope of the MLIIA if it is a departure from the standards of medical care or healthcare or if it is an inseparable part of the rendition of medical services. Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13); *Marks*, 2009 WL 2667801, at *4. Dr. Ghazali contends that Brown's laser hair removal is an inseparable part of the rendition of medical care, but in doing so, Dr. Ghazali incorrectly argues that laser hair removal procedures constitute "medical care." Because laser hair removal is not health care, medical care, or treatment, the failure to warn of the risks of the procedure or the negligent performance of the procedure cannot be an inseparable part of the rendition of health care, medical care, or treatment. *See Marks*, 2009 WL 2667801, at *7 (holding that because the alleged negligence was not directly related to the rendition of medical or health care, the MLIIA did not apply).

We therefore conclude that Brown's claim against Dr. Ghazali is not inseparable from the rendition of medical services and is not a health care liability claim. We overrule Dr. Ghazali's first issue.

## V. Expert Report

In his second issue, Dr. Ghazali contends the trial court erred by denying his motion to dismiss because Brown's expert report did not meet the requirements of section 74.351. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351. However, Brown was not required to file an expert report because she did not assert a health care liability claim. *See id.*; *Tesoro*, 281 S.W.3d at 666. We therefore overrule Dr. Ghazali's second issue.

## VI. Conclusion

Having held that Brown's claims concerning her laser hair removal procedure do not constitute health care liability claims, we affirm the trial court's denial of Dr. Ghazali's motion to dismiss.

BILL MEIER
JUSTICE

PANEL: DAUPHINOT, MCCOY, and MEIER, JJ.

DELIVERED: February 25, 2010

13