In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No.
06-11-00159-CR

                                                ______________________________

 

 

 

                                                IN
RE:  PATRICK JEROID JONES

 

 

                                                                                                  


 

                                                                                                                            


                                                     Original
Mandamus Proceeding

 

                                                                                                  


 

 

 

 

                                          Before
Morriss, C.J., Carter and Moseley, JJ.

                                            Memorandum
Opinion by Justice Moseley

                                                                              

                                                                              








                                                     MEMORANDUM 
OPINION

 

            Patrick Jeroid
Jones has filed a petition for writ of mandamus asking this Court to order the
Honorable Bobby Lockhart, presiding judge of the 102nd Judicial District Court
of Bowie County, to grant his discovery requests in two underlying criminal
proceedings:  a conviction in April 2011
wherein he was convicted of tampering with a witness, and a June 2000
conviction for aggravated sexual assault. 
Jones alleges the trial court has violated his right to due process and
his right to a fair trial, along with a claim of a Brady violation (failing to disclose exculpatory evidence).  See
U.S. Const. amends. V, VI, XIV; Brady v. Maryland, 373 U.S. 83, 87–88 (1963).  In addition, Jones requests this Court to
order the “Bowie County District Attorney’s denials — Past, Present, and future
–– of evidence related to Lakeisha DeShun Wilson . . . be ordered to cease as it relates to Relator’s post conviction remedies.”  We take judicial notice that Jones’ conviction
for tampering with a witness has been appealed to this Court and that this Court
has yet to issue an opinion or mandate.[1]  

            To be entitled to mandamus relief, a
relator must show both that he has no adequate remedy
at law to redress the alleged harm and that he seeks to compel a ministerial
act, not involving a discretionary or judicial decision.  State ex
rel. Young v. Sixth Judicial Dist. Court of Appeals at Texarkana, 236
S.W.3d 207, 210 (Tex. Crim. App. 2007) (orig. proceeding).  An act is ministerial if it constitutes a
duty clearly fixed and required by law.  State ex rel. Curry v. Gray, 726 S.W.2d
125, 128 (Tex. Crim. App. 1987).

            To the extent that Jones is
requesting this Court to issue a writ of mandamus to compel an action by the
District Attorney of Bowie County, we lack jurisdiction to take such an
action.  This Court lacks jurisdiction to
issue a writ of mandamus against a county attorney or district attorney.  See
Tex. Gov’t
Code Ann. § 22.221 (West 2004).

            To the extent Jones is complaining
about his conviction for tampering with a witness, Jones has an adequate remedy
by appeal.  Jones cites several civil
cases which hold mandamus relief is available when discovery is denied.  See
Allen v. Humpheys, 559 S.W.2d 798 (Tex. 1977) (orig.
proceeding), overruled by Walker v.
Packer, 827 S.W.2d 833 (Tex. 1992) (orig. proceeding); Barker v. Dunham, 551 S.W.2d 41 (Tex. 1977) (orig. proceeding), overruled by Walker, 827 S.W.2d at 833; Sutherland v. Moore, 716 S.W.2d 119
(Tex. App.—El Paso 1986, orig. proceeding [mand.
denied]); Warford v. Beard, 653 S.W.2d 908, 910 (Tex.
App.—Amarillo 1983, no writ); Warford v. Childers,
642 S.W.2d 63, 65 (Tex.  App.—Amarillo
1982, no writ).  To the extent these
cases may support Jones’ argument that mandamus relief is available, his reliance
on civil cases is misplaced.  In a criminal
case, we are bound to follow the precedent of the Texas Court of Criminal
Appeals.  Dickens v. Court of Appeals For Second Supreme Judicial Dist. of Tex.,
727 S.W.2d 542, 546 (Tex. Crim. App. 1987) (orig. proceeding).  

            The Texas Court of Criminal Appeals
has held mandamus relief unavailable for orders denying discovery to a
defendant because a defendant has an adequate remedy by appeal.  Id.
at 550–52.  In Dickens, the court noted that “[i]f this
Court allowed mandamus to be substituted for appellate review in discovery
situations, the trial of cases would be slowed to a crawl, and eventually,
mandamus would be substituted for the appellate process in all pretrial
matters.”  Id. at 551.  This same
principle also applies to any alleged Brady
violations, matters which are likewise reviewable in a direct appeal.  In re
Sanchez, 268 S.W.3d 680, 682 (Tex. App.—Corpus Christi 2008, orig.
proceeding).  To the extent that Jones’
petition makes complaints regarding his conviction for tampering with a
witness, the fact that Jones has an adequate remedy by appeal is demonstrated
by the fact that the case to which he refers is actually currently on appeal
and is pending before this Court.  Jones has
failed to show that he is entitled to mandamus relief.

            To the extent that Jones complains
about his conviction in 2000 for aggravated sexual assault, mandamus relief is
unavailable.  Texas courts have
recognized that “the exclusive post-conviction remedy in final felony convictions
in Texas courts is through a writ of habeas corpus pursuant to TEX. CODE CRIM.
PROC. art. 11.07.”  Olivo v. State, 918 S.W.2d 519, 525 n.8 (Tex. Crim. App. 1996); see also Tex. Code Crim. Proc. Ann. art. 11.07 (West Supp. 2010).  The Texas Court of Criminal Appeals has held that
a writ of habeas corpus is the exclusive post-conviction remedy.  Ater v. Eighth Court
of Appeals, 802 S.W.2d 241, 243 (Tex. Crim. App. 1991) (orig. proceeding).  Jones has not established he is entitled to
mandamus relief.

For the reasons stated, we deny Jones’ petition for writ of
mandamus.

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          September
6, 2011

Date Decided:             September
7, 2011

 

Do Not Publish











[1]See Jones v. State, cause number 06-11-00085-CR.  This appeal is currently abated to the trial
court to either appoint appellate counsel for Jones, who represented himself at
trial, or to conduct a hearing pursuant to Faretta v. California, 422 U.S. 806 (1975).  








the underlying nature of the claim. 
Rose, 156 S.W.3d at 543; Parker v.
CCS/Meadow Pines, Inc., 166 S.W.3d 509, 512 (Tex. App.––Texarkana 2005, no
pet.).  A health care liability claim
cannot be recast as another cause of action in an attempt to avoid the expert
report requirement.  Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 851 (Tex.
2005).  We are not bound by the form of
the pleading.  Id. at 847.  When the essence
of the suit is a health care liability claim, a party cannot avoid the
requirements of the statute through artful pleading.  Rose,
156 S.W.3d at 543; see Yamada v. Friend,
335 S.W.3d 192 (Tex. 2010) (unchallenged holding that claims encompassing
physician’s safety advice to water park were health care liability claims
required dismissal of all claims arising from same facts on theory of improper
claim-splitting).  In determining whether
a claim is a health care liability claim, we consider whether testimony from a
medical or health care professional is necessary to prove the claim.  Rubio,
185 S.W.3d at 848, 851.  However, a claim
may be a health care liability claim even if it does not require expert testimony
to prevail at trial.  See Murphy v.
Russell, 167 S.W.3d 835,
838 (Tex. 2005). 

            C.        Cannon’s
Claims  

            Here, applying
Chapter 74, we determine the hairy question of whether Cannon’s claims in this
case are health care liability claims by analyzing whether his cause of action
is for “treatment, lack of treatment, or other claimed departure from accepted
standards of medical care, or health care, or safety.”  Tex.
Civ. Prac. & Rem. Code Ann. § 74.001(a)(13).  There is no dispute that Stanford and Thomas
are health care providers.  See Tex.
Civ. Prac. & Rem. Code Ann. § 74.001(a)(12).[2]  Stanford contends the gravamen of this claim
alleges a departure from accepted standards of medical or health care.  In response, Cannon relies on Tesoro v. Alvarez, 281 S.W.3d 654 (Tex.
App.—Corpus Christi 2009, no pet.), and Ghazali
v. Brown, 307 S.W.3d 499 (Tex. App.—Fort Worth 2009, pet. granted), in
support of his contention that his claims are not health care liability
claims.  In each of these cases, it was
determined that allegations of injury resulting from laser hair removal were
not health care liability claims; thus, Cannon maintains, Chapter 74 did not
apply.  These holdings were, in large
part, based on the definition of “treatment.”[3] 

            In
Tesoro, the Corpus Christi court was
faced with the question of whether a patient who was scarred as a result of
laser hair removal at a medical clinic and who sued the physician/general
partner of the clinic, alleging vicarious liability for the clinic’s nurse in
removing hair from her legs, was a health care liability claim.  The nurse was alleged to have been negligent
in improper deployment of the laser hair removal device.  Tesoro
most notably stands for the proposition that laser hair removal is not “health
care” because the plaintiff was not “treated” as that term is used by medical
definition.[4]  Tesoro, 281 S.W.3d at 659.  

            The
term “treatment” is not defined in Chapter 74. 
Section 74.001(b) of the Texas Civil Practice and Remedies Code provides
that “[a]ny legal term or word of art used in this chapter, not otherwise
defined in this chapter, shall have such meaning as is consistent with the
common law.”  Tex. Civ. Prac. & Rem. Code Ann. § 74.001(b) (West 2011).  Tesoro
adopted the definition of “treatment” in a medical context, thus rejecting the
Webster’s Collegiate Dictionary definition of that term.[5]  In the medical context, the Tesoro court determined that treatment
was defined as “the care and management of a patient to combat, ameliorate, or
prevent a disease, disorder, or injury.” 
Tesoro, 281 S.W.3d at 659
(quoting Mosby’s Medical Dictionary
1880 (8th ed. 2009)).[6]  Based on the definition of “treatment” in the
medical context, the record did not support a determination that the laser hair
removal procedure was “to combat, ameliorate, or prevent a disease, disorder,
or injury.”  Id.  Moreover, Tesoro rejected the contention that because a medical history was
taken prior to the laser hair removal procedure, the procedure amounted to
health care.  The appellate record did
not contain the medical history, consent forms, or progress notes allegedly
generated.  The fact that the procedure
took place in a medical clinic could not, by itself, transform the conduct into
“health care.”  Id. at 660.  The court also rejected Tesoro’s argument
that because the hair removal procedure involved a regulated medical device,
“health care” forms the basis of the allegations.  The restrictions Tesoro relied on related to
labeling requirements, and were relevant to misbranding violations, but did not
form a predicate for a health care liability claim.  

            Finally,
of significance to the court in Tesoro
was the fact that the laser hair removal device could (then, as with the case
before us) be used by a lay person in the absence of a supervising physician or
a health care provider.  Because Tesoro
did not supervise or participate in the laser hair removal procedure, no
doctor-patient relationship existed.  The
court, therefore, concluded that the laser hair removal procedure in that
circumstance did not involve treatment related to health care; thus, the
plaintiff did not assert a health care liability claim.  Id. at 666. 

            We
acknowledge the similarities of this case to Tesoro.  The petition here,
as in Tesoro, alleges vicarious
liability against the physician.  In both
cases, the procedure was conducted by an employee of the physician (in this
case, a technician; in Tesoro, a
nurse).  At the time of both procedures,
the use of a laser hair removal device was unregulated.[7]  There were no requirements regarding
credentialing or licensure of individuals operating laser hair removal
devices.  Id. at 665.  In both cases, a
laser hair removal device could be used without a physician or health care
provider present.  There are important
factual distinctions between Tesoro
and the case before us.

            Unlike
Tesoro, this case involves
supervision of the laser hair removal procedures by a licensed physician.  Moreover, the overall context in which the
procedures were administered indicates they were conducted as medical procedures.  See id.
at 659 (context in which procedure occurs may include factors to consider
in determining whether claim is for “health care”).  The record here includes medical
documentation[8]
of the type typically encountered in the records of a physician or medical
clinic.  Stanford signed authorization
forms identifying him as the “[p]atient,” which indicated that the hair removal
process would be supervised by Thomas, a physician.  Stanford relies on the medical records
(reports of procedures performed on Cannon) and the fact that Thomas signed those
records (thus supervising, in essence, those procedures) in support of his
contention that this is a health care liability claim, citing Rubio, 185 S.W.3d at 848 (cause of
action alleges departure from accepted standards of medical care or health care
if act or omission complained of is inseparable part of rendition of medical
services).  Thomas’ signature on the
progress notes indicates that he reviewed the chart and that he agreed with the
“treatment/s and parameters as indicated.” 


            Thomas
signed the medical records, authored by Stanford, after the fact.[9]  Cannon urges there can be no
physician-patient relationship in such a situation, urging that “the duty to
treat the patient with proper professional skill flows from the consensual
relationship between the patient and physician, and only when that relationship
exists can there be a breach of a duty resulting in medical malpractice.”  Ramirez
v. Carreras, 10 S.W.3d 757, 761 (Tex. App.—Corpus Christi 2000, pet.
denied).  We cannot overlook the fact that
Cannon consented to have these procedures conducted under Thomas’ supervision
and control and that Thomas approved of the “treatment/s and parameters”
indicated.  The fact that a physician
does not deal directly with a patient does not necessarily preclude the
existence of a physician-patient relationship. 
Lection v. Dyll, 65 S.W.3d 696,
704 (Tex. App.—Dallas 2011, pet. denied). 
Likewise, physical contact between a doctor and patient is not necessary
to create a physician-patient relationship. 
See Dougherty v. Gifford, 826
S.W.2d 668, 674 (Tex. App.—Texarkana 1992, no writ) (physician-patient
relationship existed between patient from whom biopsy was taken and doctors at
laboratory examining biopsied tissue negligently misdiagnosed malignant
cancer).  The fact that Thomas reviewed
and approved of the treatments Cannon received and that Cannon agreed to
Thomas’ supervision and control of the procedures, is sufficient to create a
physician-patient relationship between Cannon and Thomas.  In Tesoro,
there was no physician-patient relationship.[10] 

            We
also consider the fact that Cannon filled out a medical history questionnaire
and signed a consent form in order to undergo these procedures.  The medical history form was pertinent to the
laser treatment and contained information which was necessary to an
understanding of whether Cannon was a good candidate for the procedure, such as
current medications and past and present health problems.  Moreover, Cannon was considered (at least pursuant
to documentation) a patient of the center, as he was designated in that manner
on the consent form.  The consent form
was much the same as those commonly utilized in the arena of medical
treatment.  The risks, benefits, and
complications associated with the procedure were disclosed.  In addition, the consent form indicated that
“medical personnel” were to perform the procedure under Thomas’ “supervision
and control.”  No such records were
considered in Tesoro.  Because these factors were lacking in Tesoro, we find the substance of the
claims alleged here, in light of the overall context of the care provided, are
markedly different from Tesoro.

            This
case is likewise distinguishable from Ghazali,
in which the court determined that a claim against the medical director of the
American Laser Center in Fort Worth for severe burning, blistering and
lacerations to the plantiff’s face and neck caused by laser hair removal
treatment was not a health care liability claim.  Ghazali,
307 S.W.3d at 505.  Although Ghazali
served as the facility’s medical director at the time of Brown’s initial
treatment, center employees performed the actual treatment.  The allegations in the Ghazali petition are direct liability claims.  The interesting twist to this case is that
despite the fact that the plaintiff filed an expert report within the 120-day
period required by Section 74.351, the court nevertheless found that the claims
asserted against Ghazali (negligence, negligent failure to warn, gross
negligence, violations of the Texas Deceptive Trade Practices-Consumer
Protection Act, fraud, and lack of informed consent) were not health care
liability claims.[11]

            In
determining that laser hair removal did not constitute medical care or
treatment, the Ghazali court defined
“treatment” in accord with the definition of that term in Mosby’s Medical Dictionary, although it did not state the rationale
for the selection of this particular definition.[12] The
court then quickly disposed of the issue of whether laser hair removal was a
health care liability claim when it stated:

The parties do not argue, and the record does not
suggest, that Brown sought laser hair removal to “combat, ameliorate, or
prevent a disease, disorder, or injury” or that the hair removal relates to a
“physical disease or disorder or physical deformity or injury.”  See Tex.
Civ. Prac. & Rem. Code Ann. § 74.001(a) (19); Tex. Occ. Code Ann. § 151.002(13);
Mosby’s Medical Dictionary 1880 (8th ed. 2009). Therefore, Brown’s laser hair
removal is not “treatment” or “medical care.” And because Brown’s laser
hair removal is not “treatment” or “medical care,” it follows that it is also
not “health care” because “health care” requires an act or treatment during the
patient’s medical care or treatment.  See Tex.
Civ. Prac. & Rem. Code Ann. § 74.001(a) (10). 

 

Ghazali, 307 S.W.3d at 503–04 (footnote omitted).[13]  Unlike this case, Ghazali did not involve a physician-supervised course of treatment,
medical records, a consent form that stated the risks and benefits of
treatment, or a physician-patient relationship.  We, therefore, look beyond the holdings of Tesoro and Ghazali to determine whether the claim here is for health care
liability.

            A
final factor in our consideration of this issue is whether expert medical
testimony would be required to prove the alleged negligence.  Rubio, 185 S.W.3d at 848 (a factor in considering whether cause of
action is inseparable part of rendition of health care services is whether
expert testimony from a medical or health care professional is necessary to
prove claim); San Antonio Extended Med.
Care, Inc. v. Vasquez, 327 S.W.3d
193, 199 (Tex. App.—San Antonio 2010, no pet.).  Cannon alleged his injuries were proximately
caused by Stanford’s negligence in failing to skillfully and properly use the
laser device and in failing to stop the laser treatment in a timely
manner.  Stanford contends that expert
medical testimony would be required to prove each of these claims.  

            Indeed,
expert testimony would be required to establish the appropriate laser hair
removal device settings for removal of hair from the genital area, as well as
to establish the appropriate use of the device once the settings were
established.  Stanford consulted with a
physician, Dr. Birken,[14]
to verify the settings for the Nd-Yag laser to be utilized on the genital area.  Thomas approved of those settings and of the
parameters of treatment.  Cannon contends
that because lay persons routinely operate laser hair removal devices without
medical supervision or guidance, any needed expert testimony could be elicited
from a technician trained in the use of the laser hair removal device as
opposed to seeking the same information from a physician.  Whereas this may be true in a case in which a
laser hair removal device is operated without medical supervision or guidance,
we do not believe it is true here. 

            Even
though Stanford was trained in the use of the laser hair removal device, she
nevertheless sought a physician’s advice on the appropriate settings in this
particular circumstance.  The question of
whether these settings were appropriate falls directly within Cannon’s
allegation that Stanford failed to “skillfully and properly use the laser
device.”  We believe the question of the
skillful and proper use of a laser hair removal device, under the circumstances
of this case, is a question requiring expert testimony from a medical or health
care professional.[15]
 This conclusion is highlighted by the
fact that the procedures here were undertaken with the advice and approval of
two medical doctors.[16]  Expert medical testimony is required to
establish whether the laser hair removal device was correctly calibrated,
whether the correct attachment was utilized, and whether the procedure should
have been performed in a shorter time span. 
Such information is not within the common knowledge of the general
public.  See Rose, 156 S.W.3d at 544.[17]

            Obviously,
certain medical procedures constitute medical treatment under the most commonly
utilized definitions of that term.  In
those circumstances, there is little or no debate on the issue of whether such
treatment actually occurred.  Here, we
are faced with a unique set of facts that go beyond the Tesoro and Ghazali
formulations.  This scenario, likewise,
does not fall within the parameters of Kanase[18]
and Sarwal[19]
(finding pleadings in laser hair removal case allege health care liability
claim).  In this unique circumstance, we
must look to the overall context of the claims, as well as to the
physician-patient relationship involved in order to determine whether Cannon
asserted a health care liability claim.  

            Here,
we look to the following factors:  (1)
medical records (“progress notes”) were generated in connection with each of
the two procedures performed on Cannon, (2) Thomas signed those progress notes,
indicating his agreement with the treatment given and to the fact that he was
led to believe that his treatment would be supervised by a physician, (3)
Cannon was designated as a patient, (4) a consent form was obtained which not
only outlined the risks of the procedure, but that also indicated that Cannon
consented to allow “the medical personnel at Cosmetic Skin Laser & Hair
Removal of Greenville under the supervision and control of Jack Thomas M.D.” to
perform the procedure, (5) a detailed medical history was taken, and (6) expert
medical testimony is required to prove Cannon’s claims.

            These
factors indicate that the underlying nature of Cannon’s claim, regardless of
how it was pled, is one for health care liability.  Here, the alleged improper use of the laser
hair removal device was an inseparable part of the rendition of medical
services.  See Rubio, 185 S.W.3d at 848–49. 
Cannon was, therefore, subject to the requirements of Section 74.351
because his suit asserts a health care liability claim.  See
Rose, 156 S.W.3d at 546.       

III.       CONCLUSION


            We
reverse the judgment and remand to the trial court for further proceedings
consistent with this opinion.

            

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date
Submitted:          June 8, 2011

Date
Decided:             June 23, 2011

 

 











[1]See Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (West 2008) (providing
interlocutory appeal from order denying relief sought by motion under Section
74.351(b)).





[2]Under
the statute, “[h]ealth care provider” is defined as

 

any
person, partnership, professional association, corporation, facility, or
institution duly licensed, certified, registered, or chartered by the State of
Texas to provide health care, including: . . . 

 

                . . . .

 

                (ii) an employee, independent
contractor, or agent of a health care provider or physician acting in the
course and scope of the employment or contractual relationship.

 

Tex.
Civ. Prac. & Rem. Code Ann. §
74.001(a)(12).  Cannon does not challenge
Stanford’s status as a health care provider.





[3]In
addition to Tesoro and Ghazali, two additional cases discuss
the issue of whether laser hair removal treatment amounts to health care.  Both cases conclude that health care
liability claims were asserted.  See Kanase v. Dodson, 303 S.W.3d 846
(Tex. App.—Amarillo 2009, no pet.) (Direct liability claim against
physician-owner of laser hair removal clinic for burns sustained during
procedure conducted by clinic employee. 
Allegations of failure to properly train and supervise employees in use
of laser hair removal device are integral components of rendition of health
care.); Sarwal v. Hill, No.
14-01-01112-CV, 2002 WL 31769295 (Tex. App.—Houston [14th Dist.] Dec. 12, 2002,
no pet.) (allegations of compliance with Article 4590i and that nurse breached
nursing standards of care and violated Texas Nurse Practice Act regulations in
conducting laser hair removal procedure framed only as health care liability
claim). Because this case does not involve direct allegations of negligent
supervision or breach of the medical standard of care, we consider Kanase and Sarwal in our analysis only to note the pleadings here do not explicitly support the conclusion that a
health care liability claim was asserted.

 





[4]The trial court also concluded that improperly using a
laser is not an inseparable part of the rendition of health care services.  Id.
at 666.  





[5]“The
term ‘treatment’ is defined in common usage as ‘the act or manner or an
instance of treating someone or something’ and as ‘the techniques or actions
customarily applied in a specific situation.’ 
Merriam-Webster’s Collegiate
Dictionary 1333 (11th ed. 2003).” 
Tesoro, 281 S.W.3d at 659.

 





[6]The
court also quoted the Medline Plus online dictionary definition of “treatment”
as “the action or manner of treating a patient medically or surgically” and
“treat” as “to care for or deal with medically or surgically:  deal with by medical or surgical means.”  Id.
(quoting MEDLINE PLUS, http://www.nlm.nih.gov/medlineplus/ mplusdictionary.html).
 This definition was quoted, but was not
utilized in the Court’s decision.





[7]Although
the operation of a laser hair removal device was not subject to regulation by
the State at the time this cause of action arose, it is now regulated.  See
Tex. Health & Safety Code Ann.
§§ 401.501–.522 (West 2009).  As a result
of this change in the statutory law, the application of this case as future
precedent is likely quite limited.





[8]Tesoro could not consider the
documentation factor because the record failed to include referenced
documentation such as a completed medical history.  Tesoro,
281 S.W.3d at 660.

 





[9]Stanford
claims that obtaining consent for a procedure, as was done here, is an
inseparable part of the rendition of medical care.  In support of this proposition, Stanford
relies on Section 74.101 of the Texas Civil Practice and Remedies Code, which
provides that when a suit against a health care provider or physician is based
on the “failure of the physician or health care provider to disclose or
adequately disclose the risks and hazards involved in the medical care or
surgical procedure rendered . . . , the only theory on which recovery may be
obtained is that of negligence in failing to disclose the risks or hazards that
could have influenced a reasonable person in making a decision to give or
withhold consent.”  Tex. Civ. Prac. & Rem. Code Ann. §
74.101 (West 2011).  Here, Cannon does
not complain of the failure to disclose risks associated with the laser hair
removal procedure.  





[10]The
fact that Cannon did not allege a direct liability claim against Thomas only
means that Thomas cannot be held directly liable for Stanford’s alleged
negligence; it does not mean that Cannon is free to ignore the
physician-patient relationship and the supervising role Thomas played in the laser
hair removal procedures.  





[11]After
the plaintiff served an amended expert report, the trial court denied Ghazali’s
second motion to dismiss.  Ghazali, 307 S.W.3d at 502.

 





[12]In
adopting this definition of “treatment,”
Ghazali merely states that “‘[t]reatment’ is defined by Mosby’s Medical
Dictionary as ‘the care and management of a patient to combat, ameliorate, or
prevent a disease, disorder, or injury.’ 
Mosby’s Medical Dictionary 1880 (8th ed. 2009).  We will therefore use this definition in
deciding whether laser hair removal constitutes medical care or
treatment.”  Ghazali, 307 S.W.3d at 503.

 





[13]Ghazali also rejected the contention
that laser hair removal was an inseparable part of the rendition of medical
services.  Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13).  However, Ghazali
relied on Marks v. St. Luke’s Episcopal
Hosp., No. 07-0783, 2009 WL 2667801 (Tex. Aug. 28, 2009), in support of
this proposition.  The original Marks opinion was withdrawn and
superseded on rehearing by Marks v. St.
Luke’s Episcopal Hosp., 319 S.W.3d 658 (Tex. 2010) (finding hospital
patient’s fall, caused by defective or unsafe hospital bed, is health care
liability claim). 

 





[14]The
progress notes do not clearly identify Stanford’s connection to Dr. Birken
(whose first name is not mentioned); they merely state, “I have called Dr.
Birken to verify settings for this particular area.  Dr. Birken advises to use settings specific
to his skin type without tanning.”  





[15]There
was no claim in Tesoro that expert
testimony was necessary to establish that the laser hair removal device was
improperly utilized.  The court
determined that because the claims did not constitute health care liability
claims invoking Chapter 74, the issue of expert testimony need not be
addressed.  Tesoro, 281 S.W.3d at 659.

 





[16]We
recognize current statutory law (enacted after Cannon’s procedures) requires
extensive training and certification of laser hair removal device
technicians.  Cannon argues that this new
legislation demonstrates that expert medical testimony would not be required,
while Stanford contends that because the new legislation requires a consulting
physician to establish protocols for services provided at a laser hair removal
facility, only expert medical testimony will suffice.  See
Tex. Health & Safety Code Ann.
§ 401.510.  The determination of the need
for expert medical testimony is a fact specific determination, which cannot be
made solely in reference to these statutory provisions.  Further, these provisions were not in effect
at the time of Cannon’s treatment.





[17]Even
if testimony of a laser hair removal device technician is sufficient to
establish the appropriate operation and settings of a laser hair removal device
in this circumstance, the fact that expert medical testimony may not be
necessary to support a verdict does not necessarily mean that a claim is not a
health care liability claim under Chapter 74.  Med.
Hosp. of Buna Tex., Inc. v. Wheatley, 287 S.W.3d 286, 294 n.2 (Tex. App.—Beaumont
2009, pet. denied) (citing Murphy,
167 S.W.3d at 838).

 





[18]Kanase, 303 S.W.3d 846.

 





[19]Sarwal, 2002 WL 31769295.